ROBERT S. GREEN (SBN 136183)
EMRAH M. SUMER (SBN 329181)
**GREEN & NOBLIN, P.C.**
2200 Larkspur Landing Circle, Suite 101
Larkspur, CA 94939
Telephone: (415) 477-6700
Facsimile: (415) 477-6710
Email: gnecf@classcounsel.com

ALICIA HINTON (SBN 292849)
**LAW OFFICE OF A.L. HINTON**
7081 N. Marks Ave. #104
PMB 414
Fresno, CA 93711
Telephone: (559) 691-6900
Facsimile: (559) 421-0373
Email: alicia@alhintonlaw.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| John Alberto Jaimes,<br><br>        Plaintiff,<br><br>vs.<br><br>American First Finance, LLC.<br><br>        Respondent. | **CASE NO.: 3:23-cv-00978-SK**<br><br>**AMENDED COMPLAINT FOR:**<br><br>1. Violation of Unfair & Deceptive Business Practices (Cal. Bus. & Prof. Code § 17200 *et seq.*);<br>2. Violation of Consumers Legal Remedies Act (Cal. Civ. Code § 1750 *et seq.*); and<br>3. Failure to provide Spanish language contract in violation of Cal. Civ. Code § 1632. |

1.      Plaintiff, John Alberto Jaimes, (hereinafter "Plaintiff") alleges on the basis of Plaintiff's own acts, facts known to Plaintiff, the investigation of Plaintiff's counsel, and belief as to all other matters, as follows:

## I.      INTRODUCTORY STATEMENT

2.      Plaintiff brings this complaint against Respondent American First Finance, LLC ("American First Finance") for the unlawful consumer loan ("Installment Loan") that American First Finance originated. This case challenges a business scheme developed by AFF to camouflage loans exceeding 120% interest to extract millions of dollars from vulnerable consumers who purchase retail goods.

3.      The Installment Loan violates California Law because, at the time American First Finance made this loan, it did not have the license required by Cal. Fin. Code §22000 *et seq.* (known as the California Financing Law) to offer and fund loans in California.  The California Financing Law requires the licensing and regulation of finance lenders making consumer loans and prohibits misrepresentations and fraudulent and deceptive acts in connection with making loans.  A finance lender is defined in the law as "any person who is engaged in the business of making consumer loans . . . ."

4.      Loans made by licensed lenders have interest rate caps.  Loans under $2,500 are subject to tiered interest rate caps, with 30% as the highest APR that can be charged. For loans between $2,500 and $9,999, beginning January 1, 2020, there is an interest rate cap of 36% plus the Federal Funds Rate on consumer loans.  American First Finance, however, simply ignores these interest rate caps in California, charging interest rates typically ranging from 120% to 170% annually.

5.      In order to evade these interest rate caps, American First Finance has concocted a scheme (the "Rent-a-Merchant Scheme") that tries to take advantage of the provision in the California Financing Law which exempts certain *bona fide* retail installment sales contracts. The Financing Law provides that it "does not apply to bona fide conditional contracts of sale

AMENDED COMPLAINT
CASE NO.: 3:23-cv-00978-SK

1   involving the disposition of personal property when these forms of sales agreements are not

2   used for the purpose of evading this division."  Cal. Fin. Code §22054.  American First Finance,

3   which is a national lender and not a retail seller of goods or services in California, structures its

4   transactions as retail installment sales contracts primarily for the purpose of evading the

5   restrictions of the California Financing Law.

6          6.      The Rent-a-Merchant Scheme does not absolve American First Finance of the

7   obligations California imposes on lenders because California looks past form to the substance of

8   a transaction to identify the true lender in a transaction. "The courts have been alert to pierce the

9   veil of any plan designed to evade the usury law and in doing so to disregard the form and

10  consider the substance. . . .  No case is to be judged by what the parties appear to be or represent

11  themselves to be doing, but by the transaction as disclosed by the whole evidence[]." *Milana v.*

12  *Credit Disc. Co.*, 27 Cal. 2d 335, 340-341 (1945) (internal markings and citations omitted).

13         7.      The California legislature also codified the "judicial principle that the substance

14  of a transaction rather than its form is determinative of its characterization as a loan or credit

15  sale[]." Cal. Civ. Code §1801.6(a).

16         8.      The actions American First Finance undertakes to make installment loans to

17  consumers demonstrate that American First Finance, not any individual merchant, is the true

18  lender in such transactions and, as such, it is an unlicensed lender in violation of California's

19  Financing Law.

20         9.      In addition, American First Finance loans violate California law because

21  American First Finance charges an unconscionably high interest rate as reflected in its Annual

22  Percentage Rate ("APR").

23         10.     The APR Provision in the Security Agreement between the parties requiring

24  Plaintiff to pay an APR of 169.88% or more in connection with the Installment Loan is

25  unconscionable under the analysis prescribed by the California Supreme Court in *De La Torre v.*

26  *CashCall, Inc.*, 5 Cal. 5th 966, 984 (2018).

27

28

AMENDED COMPLAINT
CASE NO.: 3:23-cv-00978-SK

11.     Plaintiff seeks a determination that the Security Agreement is subject to the California Financing Law §22000 *et seq*; that American First Finance did not have the license required by the California Financing Law necessary to offer and fund loans in California; that the Security Agreement is void; that the APR Provision is unconscionable; that American First Finance had no right to collect or receive any principal, charges, or recompense in connection with the transactions. Given these facts, Plaintiff seeks a public injunction prohibiting American First Finance from continuing to offer financing in California without obtaining the appropriate license and from collecting on loans that it has already made in violation of the California Financing Law.

12.     In this case, Plaintiff has been obligated to pay for financing at terms – including exorbitant interest rates – that were neither requested nor agreed to.  Attached as Exhibit 1 is a true and correct copy of the first page of the Security Agreement that is the subject of this action. At the time of this filing, Plaintiff does not have a copy of the entire Security Agreement that is the subject of this claim, a true and correct copy of which is in the possession of American First Finance.

13.     The standard form contract for American First Finance contains an arbitration provision.  However, as alleged in more detail below, there was no meeting of the minds between the Merchant and Plaintiff with regard to either the arbitration provisions or the other terms of the purported contract.  Plaintiff is a native Spanish speaker and the transaction was negotiated in Spanish without disclosure of any arbitration provisions or the APR or the other material terms.  Plaintiff relied on the Merchant's representations to understand the terms of the transaction, but those representations were false, contained material omissions and did not match the terms in the written document.  The Merchant created the document in English in violation of Cal. Civil Code §1632, as well as other California statutes.

## II.     THE PARTIES, JURISDICTION AND VENUE

### A.     Plaintiff

14.     Plaintiff is a resident of Sunnyvale, CA.

**B.    Respondent American First Finance**

15.    Respondent American First Finance, LLC is a limited liability company organized and incorporated under the laws of the State of Delaware with its principal place of business at 3515 N. Ridge Rd, Ste. 200, Wichita, KS 67205.

16.    Prior to December 9, 2021, Respondent American First Finance was a corporation organized and incorporated under the laws of the State of Delaware.

17.    On December 9, 2021, American First Finance converted into the Delaware limited liability company now known as American First Finance, LLC.

18.    Effective December 17, 2021, American First Finance became a wholly owned subsidiary of Firstcash Holdings, Inc., a Delaware corporation with principal executive offices at 1600 West 7th Street, Fort Worth, TX 76102.

19.    American First Finance does not hold a license to offer loans in California.

20.    Plaintiff is informed and believes, and on that basis alleges, that at all times stated herein American First Finance was the original obligee, or in the alternative, was the "holder" of Plaintiff's obligations as acknowledged by American First Finance in the language found in the Security Agreement.

21.    This Court has jurisdiction over this matter pursuant to C.C.P. §410.10.  Venue is proper in this Court pursuant to C.C.P. §395(b) because the case involves an extension of credit that occurred in this County to Plaintiff, who is a resident of this County, and Defendant does business in this County.  Jurisdiction is unlimited because this complaint seeks a permanent injunction.

**III.    FACTUAL ALLEGATIONS**

**A.    The Loans Offered by American First Finance**

22.    American First Finance provides loans for the sale of consumer goods and services through retailers with whom American First Finance has a preexisting relationship. American First Finance delivers almost instant credit approvals with little to no credit history.

AMENDED COMPLAINT
CASE NO.: 3:23-cv-00978-SK

American First Finance provides loans of up to $5,000 for purchases at interest rates typically ranging from 120% to 170%.

23.     The consumers that American First Finance targets are individuals with poor credit. These individuals are easy prey for unscrupulous lenders because, as a result of frequently being denied credit, they are usually willing to take the first offer of credit they receive. This means they do not engage in comparison shopping of different credit offers to seek out the best credit terms.  In some cases, merchants offer financing through multiple lenders through which a customer's credit data can be run, ranging from a high-quality lender like Synchrony Bank down to the lowest quality lender, American First Finance.  The other lenders included in this process are licensed to make loans in California, but American First Finance is not.

24.     American First Finance provides the loans through a standard "Security Agreement," differing only the interest rates and total amount of the loan based on the amount of the purchase and its evaluation of the borrower's credit rating.

25.     Each loan has an interest free period of 90 or 101 days at the beginning of the loan, which enables merchants to tell customers not to worry about what the interest rate is because there will not be any interest if the loan is repaid during the interest free period.

**B.     American First Finance's Process for Originating and Servicing Loans**

26.     American First Finance widely advertises its loan services through social media, on its own website, on its merchants' websites and through posters and brochures placed in its merchants' storefronts.

27.     A customer can apply for a loan from American First Finance by clicking on a link in a merchant's website, by texting a numerical code on a cell phone or by providing their information to a merchant who inputs the information into the web portal provided and managed by American First Finance.  Once the information is input the approval is typically provided in a minute or two.  If the customer applies directly through their cell phone or a computer link, they receive back from American First Finance a numerical code.  The customer shows the code to

the merchant, who inputs the code into the American First Finance portal.  American First Finance then generates the loan documentation which can be accessed through the web portal. The loan documents can then be "signed" by either the merchant clicking through the signature blocks, or through a DocuSign email that might appear on the customer's phone, which then scrolls directly to the signature locations, bypassing and obscuring such terms as the TILA disclosures, interest rates, arbitration provisions and the like.  Alternatively, some merchants use a separate electronic signing pad, separated from the screen on which the agreement appears, and ask customers to sign the pad however many times is required for the agreement without making the agreement visible to the customer who is signing.

28.     The merchant then electronically indicates its signature and the document is completed in the files of American First Finance.  In most instances, the merchant has no way to deliver a copy of the agreement to the customer.  Although the agreement purports to be between the customer and the merchant, pursuant to the prior arrangement between the merchant and American First Finance, all of the customer's obligations run directly to American First Finance from the moment the document is signed.

29.     In many instances, American First Finance prepares the merchant's invoice on its own form through its automated document generation process, which is not provided to the consumer at the point of sale.

30.     American First Finance's loan agreement is a non-negotiable, clickthrough agreement, the terms of which are dictated by American First Finance, non-modifiable by the merchant and non-negotiable by consumers.

31.     Throughout the consumer purchase transaction, the role of American First Finance and the terms of the transaction are never fully disclosed to the consumer.

32.     American First Finance makes the sole determination of consumers' creditworthiness and dictates all financing decisions.

AMENDED COMPLAINT
CASE NO.: 3:23-cv-00978-SK

33.     American First Finance handles all administration of these loans.  Payments are made either weekly, biweekly or monthly by direct removal from customers' bank accounts in most instances.

**C.     American First Finance's Relationships with Merchants**

34.     American First Finance provides Installment Loans for the sale of consumer goods or services through the use of its network of retailers.  Merchants comply with American First Finance's fraudulent and illegal scheme because the merchants are able to increase their sale of goods or services to consumers by offering an installment payment option through no effort of their own because American First Finance controls the entire process, leaving nothing for the merchant to do beyond selling their goods and services and then inputting customers' credit information into the American First Finance web portal.  The retailer gets paid all or nearly all of the retail price directly by American First Finance on behalf of the customers, while the customers get saddled with automatic withdrawals from their bank accounts at exorbitant interest rates.  The retailers and American First Finance generate massive profits off of these vulnerable consumers, many of whom are trying to buy goods on sale or at discount prices without ever knowing that the financing will triple the cost of their purchases.

35.     American First Finance provides merchants with an electronic portal to enter consumer information, uses that consumer information to generate Security Agreements, and induces merchants to present the Installment Loans that are issued pursuant to these Security Agreements as loans that on their face purport to be originated by the merchants and then assigned to American First Finance, but in fact, are originated by American First Finance.

36.     American First Finance's involvement with the merchants goes beyond that necessary to effectuate the purchase of credit sales, in that:

a.     American First Finance enters into Merchant Agreements with retailers prior to consumers contemplating a purchase of goods;

b.      Merchants are required to create an online account with American First Finance prior to offering American First Finance loans to consumers;

c.      American First Finance provides in-store marketing materials to merchants for American First Finance products;

d.      American First Finance provides in-person and online training to merchants on how to prepare and upload American First Finance forms to its website;

e.      American First Finance provides merchants with a hyperlink to American First Finance's pre-approval process that can be integrated into the merchants' own retail websites;

f.      American First Finance runs incentive programs that directly reward merchant staff for each Installment Loan that they successfully market to store customers; and,

g.      American First Finance regulates how merchants can advertise the Installment Loans and promote such services in social media. It monitors such activity, and takes corrective action when merchants do not comply with its rules.

37.     It is American First Finance, not any of the merchants, that holds the predominant economic interest in these loans. American First Finance bears the risk of poor loan performance and performs all the functions of a traditional lender with virtually no downside to the merchant.  American First Finance is the true lender and its loans are illegal.

38.     American First Finance made and continues to make these loans in willful violation of California Financing Law and, in any event, has had more than 60 days since notification of the error to notify the customer and correct the error.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**D.      Facts as to Plaintiff**

39.      Around July 1, 2021, Plaintiff visited Ramos Furniture ("Merchant") in Santa Clara, California. At the store, he picked out a bedroom set that he wanted to purchase.  The bedroom set he selected was priced at a 25% discount due to the condition of the furniture. Plaintiff believed he was saving around $750 off the full retail price with this selection.  He paid the Merchant a $280 down payment with his credit card and, at the Merchant's urging, financed the remaining $2,150.

40.      The Merchant who helped Plaintiff spoke Spanish.  Also speaking Spanish, Plaintiff told the Merchant that he intended to pay for the bed with his own funds.  The Merchant, however, suggested that Plaintiff consider financing his purchase and told Plaintiff that financing would help his credit score.  The Merchant also told Plaintiff that the interest on the loan was low and that he would not have to make any loan payments until after the bed was delivered. The Merchant further told Plaintiff that if he paid the amount financed of $2,150 within three months, there would be no interest at all.

41.      Based on the Merchant's representations, Plaintiff agreed to apply for financing. The Merchant collected Plaintiff's banking information and completed the loan application on the Merchant's computer.  The Merchant then informed Plaintiff that he was approved for financing.

42.      The Merchant printed out the Security Agreement and collected Plaintiff's signatures on the document, but the Security Agreement was written in English and Plaintiff could not read or understand anything in the document, but was relying on the representations of the Merchant.  The Merchant did not disclose any of the provisions related to arbitration.  He also neglected to explain that the APR on the loan was 169.88% and that the savings of around $750 that Plaintiff thought he would benefit from by selecting the discounted merchandise were dwarfed by the finance charge on this loan of $5,439.74.  At the end of this process, the Merchant only provided Plaintiff with a copy of the first page of the Security Agreement and the one page "Sales Order" for his purchase.

AMENDED COMPLAINT
CASE NO.: 3:23-cv-00978-SK

43.     The Merchant also told Plaintiff that his bed would arrive within 90 days and once the bed was delivered, he would have three months to pay off his loan.  However, the bed was not in fact delivered to Plaintiff until on or about January 31, 2022 – almost 7 months after the purchase.

44.     American First Finance began withdrawing loan payments from Plaintiff's bank account in connection with the Installment Loan shortly after the July 1, 2021 transaction.  Plaintiff did not pay off the loan during the three month interest free period because he was under the impression that regardless of any payments made prior to delivery of the bed, he would still have three months after delivery to pay off the loan without interest. .

45.     A few months later, Plaintiff noticed these withdrawals and contacted the Merchant to find out why loan payments were being withdrawn when his bed had not been delivered.  The Merchant apologized to Plaintiff but did nothing further.

46.     Plaintiff later learned that the Installment Loan contains an APR Provision authorizing an exorbitant interest rate of 169.88%.

47.     Plaintiff is still making loan payments pursuant to the Security Agreement in an effort to protect his credit score.

48.     If Plaintiff had known of the interest rates and other terms of the Installment Loans, Plaintiff would not have signed the Security Agreements, but instead would have explored alternative financing sources, paid cash, or delayed the purchase.

49.     The contracting practices that American First Finance used against Plaintiff were procedurally unconscionable:

        a.     American First Finance's Security Agreement is a non-negotiated, take-it-or-leave-it contract with terms that Plaintiff had to accept or reject without any modifications;

        b.     Because market imperfections exist in the loan market for borrowers whose demographic group includes Plaintiff, there is no "freely

AMENDED COMPLAINT
CASE NO.: 3:23-cv-00978-SK

competitive market"[1] determination of APRs for loans such as the

Installment Loan;

c.    Based on Plaintiff's credit score, American First Finance correctly

deduced that Plaintiff was likely to accept its offer for credit without

scrutinizing the terms of its Installment Loan;

d.    American First Finance capitalized on this knowledge to offer Plaintiff

an Installment Loan without disclosing the full extent of its

involvement in the Installment Loan and the complete terms of the

transaction;

e.    Plaintiff was pressured through the signing process by the Merchant

who knew that Plaintiff could not read the English version of the

contract and did not care if Plaintiff understood any of the provisions

of the Installment Loan or not;

f.    American First Finance further conceals the terms of the Security

Agreement by using unnecessarily complex language that Plaintiff was

unlikely to understand;

g.    By withholding and obscuring key loan information during the

contracting process, American First Finance created unfair surprise for

Plaintiff;

h.    Even though more consumer friendly contracting processes existed,

American First Finance dictated and controlled a process by which

Plaintiff was not shown a copy of the Security Agreement before being

asked to sign and was not given a printed copy of the Security

Agreement even after signing the agreement;

i.    Even for consumers who do understand English, American First

Finance uses a signing process and customizable DocuSign settings

[1] *De La Torre v. CashCall, Inc.*, 5 Cal. 5th 966, 984 (2018).

AMENDED COMPLAINT
CASE NO.: 3:23-cv-00978-SK

1    that obscures pages of the contract and materially interferes with

2    consumers' ability to learn the terms of the Security Agreement before

3    signing; and

4    j.    American First Finance designed a signing process that is intended to

5    evade the protections that federal and state laws provide for ensuring

6    required disclosures to consumers.

7    50.    The APR Provision in the Security Agreement is substantively unconscionable

8    because the APR that it applies to a secured loan is shockingly high and harsh without any

9    legitimate basis for charging such rates to borrowers such as Plaintiff.

10    a.    An expert economist retained by American First Finance testified that

11    most of American First Finance customers in California would be in the

12    subprime or deep subprime credit categories, which include consumers

13    with credit scores of 619 and below.  Based on data produced by the

14    Consumer Financial Protection Bureau ("CFPB"), in 2017 the highest

15    Total Cost of Credit for unsecured private label credit cards was around

16    40% for deep subprime and about 32% for subprime consumers. For

17    2017 to 2020, the Total Cost of Credit for unsecured private label credit

18    cards was at or below 40% for subprime and deep subprime consumers

19    and that over that five year period, the rates were quite consistent –

20    within a couple of percentage points from year to year. He further

21    testified that from 2019 to 2020, the prime rate decreased about 2

22    percentage points driving down most credit card rates.

23    b.    In discovery proceedings in federal court, American First Finance was

24    asked to produce all documents related to its determination of interest

25    rates on its retail installment sales agreements.  American First Finance

26    produced 71 documents, of which 56 were marketing fliers from

27    companies offering similar financial products, and of those fewer than

28

-12-

AMENDED COMPLAINT
CASE NO.: 3:23-cv-00978-SK

five advertised any interest rates.  American First Finance reported that its President set the rates by looking at competitors' fliers and websites and that it had no analysis of its cost of capital or other relevant data. The senior management of American First Finance was unable to recall any calculations relating to determination of the standard APRs in its Security Agreements.

### E.    Conspiracy to Violate TILA, the UCL and the CLRA.

51.    Prior to preparing the Security Agreement, American First Finance entered into an agreement with the Merchant in which the Merchant agreed that American First Finance would control the entire transaction with Plaintiff, including the design and delivery of all disclosures required under the Truth in Lending Act, 15 U.S.C. §1601, et seq. ("TILA").  The agreement may further be implied from the conduct of the Merchant and American First Finance as described herein.

52.    TILA requires that certain defined information be disclosed in lending transactions, such as this transaction, and dictates how and when the disclosures are made. See, 15 U.S.C. §§1631, 1632, and 1638, and the regulations promulgated thereunder.  TILA requires that the disclosures be made in a clear and conspicuous manner and that the APR and finance charge be made in a manner more conspicuous than the other disclosures.

53.    American First Finance and the Merchant further were aware of each other's conduct in the context of the transaction described herein and intended that the acts described herein be committed.

### F.    Grounds for a Public Injunction

54.    California Finance Code, §22001, provides as follows:

(a)    This division shall be liberally construed and applied to promote its underlying purposes and policies, which are:

(1)    To ensure an adequate supply of credit to borrowers in this state.

AMENDED COMPLAINT
CASE NO.: 3:23-cv-00978-SK

(2)  To simplify, clarify, and modernize the law governing loans made by finance lenders.

(3)  To foster competition among finance lenders.

(4)  To protect borrowers against unfair practices by some lenders, having due regard for the interests of legitimate and scrupulous lenders.

(5)  To permit and encourage the development of fair and economically sound lending practices.

(6)  To encourage and foster a sound economic climate in this state.

(7)  To protect property owners from deceptive and misleading practices that threaten the efficacy and viability of property assessed clean energy financing programs.

55.    The scheme employed by American First Finance to evade the requirements of the California Financing Law by disguising its loans as retail installment contracts originated by retailers stands in stark contrast to the purposes and policies of the California Financing Law.  American First Finance engages in unfair practices as set forth in this Complaint, including charging the unconscionable interest rates of 170% and higher, utilizing a loan origination process that masks the identity of the financer, that obscures and hides the material terms of the loans, including the interest rate, that incentivizes its retailer co-conspirators to mislead vulnerable consumers and even to cause Spanish speaking consumers to commit to transactions they cannot possibly afford, pursuant to which huge sums of money are electronically withdrawn from their bank accounts, often in the name of selling a "discount" item of furniture or repairing a vehicle that is a necessary to their ability to function. Eliminating these unfair practices will have a positive effect on the scrupulous lenders in this state by removing from the market a lender who competes not on price or quality, but on the ability to take down a vulnerable population that is not aware of other options.

AMENDED COMPLAINT
CASE NO.: 3:23-cv-00978-SK

56.     Likewise, prohibiting the unlawful conduct of American First Finance will encourage and foster a sound economic climate in this state because it will prevent vulnerable consumers from becoming ensnared into this program which provides financing that often destroys their credit, and removes funds from their bank accounts that they need to function and would spend on food and housing and other productive aspects of this state's economy, rather than become mired in uncontrollable debt at exorbitant rates.

57.     Requiring American First Finance to compete on a level basis with other lenders who are subject to the California Financing Law, or exit the market, will encourage the development of fair and sound lending practices because it will remove unfair practices from the market and allow lenders who comply with the purposes and policies ensconced in the California Financing Law to have more space to flourish and expand their services.  In this way, enjoining the illegal conduct of American First Finance will foster competition between finance lenders and will in no way reduce the adequate supply of credit to borrowers in this state.

58.     The UCL and CLRA also provide public policies that support public injunctive relief in this case.  In *McGill v. Citibank, N.A.*, 2 Cal.5th 945, 955 (2017), the California Supreme Court stated that, "public injunctive relief under the UCL [and] the CLRA . . . is relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public."  (Quotation marks and citation removed.)

59.     American First Finance designed and implemented a process by which the required disclosures are obscured and not presented in a clear and conspicuous manner.  In this case, the Merchant used the English version of the Security Agreement with a Spanish speaking consumer.  In most other cases, American First Finance's system uses two primary methods for delivering the documents.  One is by email delivered by Docusign to be received on a consumer's cell phone while at the retail business.  The other is on the merchant's computer system, often using an electronic signature pad, where the content of the document is on a separate screen not visible to the consumer when being asked to sign the document.  In

-15-

both cases, the required disclosures are not clear and conspicuous because they are either on a separate screen not visible, or the Docusign system immediately scrolls past the disclosures to the signature lines and has information on the screen which obscures the information that flashes past. And even if the consumer were to try to access the document to read it, the document is far too lengthy and complex to be viewed on a cell phone.

60.    The intent of American First Finance to evade the provisions of the California Financing Law is demonstrated by the lengths to which American First Finance goes to avoid disclosing the APR on its contracts and the vulnerable population it selects as its targets. The impact of its approach on California consumers is demonstrated by the myriad of complaints from consumers in the files of American First Finance, the Better Business Bureau and the Consumer Financial Protection Bureau. A sampling of complaints for the files of American First Finance includes the following:

      a.    Complaint: Customer stated he did not sign the contract or the application, the dealer signed for him. Resolution: Advised customer to contact the store.

      b.    Complaint: The customer is complaining about the account, the customer was saying that he did not sign the contract and he did not authorize the automatic payment. Resolution: The customer will call the store.

      c.    Complaint: Customer stated AAMCO signed the contract and that they inform this was the same as cash. Resolution:  left the customer a voicemail.

      d.    Complaint:  Customer saw that her APR% at 169.53. Customer did not like that and states that the computer signed the contract. Resolution:  I educated the customer on terms and conditions of the contract.

      e.    Complaint:  Customer reviewed contract sent and stated he never signed and his signature was forged. Resolution:  Customer informed the

AMENDED COMPLAINT
CASE NO.: 3:23-cv-00978-SK

1   merchant will not reduce the account since all of the services were

2   provided.

3     f.   Complaint:  Customer states that she never signed agreement, store

4      signed it for her without her permission.  Resolution:  We can see that

5      the customer signed the agreement from her email.  Customer asked for

6      us to show proof but we cannot.

7     g.   Complaint:  Customer states the signature on the contract is not her

8      signature.  Resolution:  Advised customer that is an E-sign and it is legal

9      and asked her if she remembers clicking at the computer.  She said she

10     didn't remember.

11    h.   Complaint:  Customer said he never signed any contract but the person

12     at the tire shop did.  Resolution:  Advised customer to fill out the ID

13     Theft Report Form.

14    i.   Customer says that he was not told about finance charges and never

15     signed any docusign.  Never given copy of contract from merchant.

16     Resolution:  Customer was sent a copy of his agreement where it shows

17     that his account will not end until 02/2021 and customer was advised

18     that he can pay off account at any time.

19    61.   The Better Business Bureau Complaints about American First Finance reflect

20  similar problems, including:

21    a.   Attempted to contact customer service to pay off my ORIGINAL

22     balance only for the very rude representative to tell me they would not

23     be accepting my payment and that I should have read the details of my

24     contract better.

25    b.   The representative utilized my father's phone and after giving him the

26     incorrect information the representative performed all of the online steps

27     to apply for the loan.  My father has automatically paid a total of

28

-17-

$9195.36 and has a remainder of approximately $7000 left to pay on this loan at 145% interest.

c. They then provided me with an electronically signed contract bearing my name that was never provided to me nor did I sign at the time of purchase. I asked them to please inform me what the rate of interest was on the loan and was informed that they were charging me 154.14%.

d. At the time of purchase I was told that this loan doesn't accumulate any interest or late fees.

e. American finance should be ashamed of how they are overcharging people! Especially without knowledge!

f. I am now obligated to pay a total of $11,000 when I was only loaned $3500 for a dog I will never see again. This 153% interest rate just doesn't seem legal as I feel this is a predatory lender I am dealing with.

62. A similar action against American First Finance is pending in the Northern District of California, entitled *Andrade v. American First Finance,* Case No. 3:18-cv-06743-SK (*Andrade*). On January 23, 2023, the Court granted summary judgment on the plaintiff's claim for a public injunction against American First Finance. The summary judgment was based on Article III standing only, which does not apply in this Court, and was not in any way a ruling on the merits of the request for a public injunction. The Court denied summary judgment on the merits of the UCL and CLRA claims asserted in *Andrade*.

## IV. CAUSES OF ACTION

### <u>FIRST CAUSE OF ACTION</u>

### (Violation of the Unfair Competition Law,

### California Business and Professions Code § 17200 et seq.)

63. Plaintiff incorporates by reference the foregoing allegations.

64. Under the Unfair Competition Law ("UCL"), unfair competition includes any "unlawful," "unfair," or "fraudulent" business act or practice.

1    65.    The UCL authorizes equitable relief for violations under Bus. & Prof. Code

2    § 17203.

3    66.    Respondent has committed and is continuing to commit acts of unfair

4    competition, as defined by, and in violation of Bus. and Prof. Code § 17200 by the following

5    acts which are more fully alleged above:

6         a.    providing loans to California consumers without a valid license to do

7              so;

8         b.    failing to disclose finance terms at the time of sale;

9         c.    concealing exorbitant and unconscionable interest rates and other loan

10             terms;

11        d.    refusing and failing to provide consumers with a copy of the Security

12             Agreement;

13        e.    misleading consumers as to the existence of financing by American

14             First Finance;

15        f.    willfully charging, contracting for, or receiving amounts not

16             authorized by the California Financing Law, Cal. Fin. Code §22000, *et*

17             *seq*. and the Truth in Lending Act 15 U.S.C. § 1601; 12 C.F.R. § 226;

18        g.    willfully charging, contracting for, or receiving exorbitantly high

19             interest rates that are unconscionable under California law;

20        h.    negotiating loans in Spanish and then providing documents only in

21             English in violation of Cal.Civ.Code §1632; and

22        i.    designing unfair contracting practices that manipulate vulnerable

23             consumers who have limited credit options by informing them that

24             they have qualified for a loan but not disclosing to them the APR on

25             the loan.

26    67.    The APR that American First Finance identifies in its Security Agreements,

27    including Plaintiff's agreement, is unconscionable under California Law:

28

AMENDED COMPLAINT
CASE NO.: 3:23-cv-00978-SK

a.   Cal. Civ. Code §1670.5 codifies unconscionability as a contract defense;

b.   The APR that American First Finance identifies in its Security Agreements is both procedurally and substantively unconscionable as alleged above;

c.   Cal. Fin. Code §22302 expressly states that "[a] loan found to be unconscionable pursuant to Section 1670.5 of the Civil Code shall be deemed to be in violation of [California Financing Law]";

d.   Civ. Code § 1770(a)(19) states it is unlawful for any person to insert an unconscionable provision in the contract "in a transaction intended to result or that results in the sale or lease of goods or services to any consumer."

68.    In addition to the facts alleged above, American First Finance violated the UCL and CLRA by acts committed in the context of servicing the Security Agreement and collecting thereon where the loan was rendered wholly or partially void or uncollectible under state-licensing and usury laws.  Each of the representations made by American First Finance in this context constitutes illegal and deceptive acts, misrepresentations of the "approval or certification" of its acts, misrepresentation of the certification by another, representations that the services have approval and characteristics that they did not have, and representations that the transaction involved rights, remedies or obligations that it does not have or involve or that are prohibited by law.

69.    Respondent's policies and practices are unlawful, unfair, and fraudulent, and likely to mislead the general public and, consequently, constitute an unlawful, deceptive, and fraudulent business act or practice within the meaning of Bus. & Prof. Code § 17200.

70.    As a direct result of the aforementioned acts, Respondent received and continues to hold ill-gotten gains belonging to Plaintiff. Plaintiff seeks to enjoin Respondent from engaging in said practices which will continue to injure and harm the members of the public who unwittingly purchase consumer goods without disclosure of American First Finance's

1    financing and at unconscionable rates unless and until enjoined from doing so by this Court.

2    Plaintiff also seeks restitution of all money and property obtained by Respondent from Plaintiff

3    together with attorneys' fees and costs according to proof.

4                                        **SECOND CAUSE OF ACTION**

5                              **(Violation of the Consumers Legal Remedies Act,**

6                                **California Civil Code § 1750 et seq.)**

7        71.    Plaintiff incorporates by reference the foregoing allegations.

8        72.    Plaintiff brings this cause of action against American First Finance.

9        73.    American First Finance is a "person" providing "services" to "consumers" as part

10   of a "transaction" as defined in Civil Code § 1761(a), (b), (c), (d) and (e).

11       74.    Plaintiff is a "consumer" subject to the "transaction" as defined in Civil Code

12   §1761(d), (e) and (g).

13       75.    By engaging in the misrepresentations, concealments, and false statements

14   alleged in this complaint, American First Finance has violated Civil Code §1770(a)(2), (3), (5),

15   (14), (16) and (19).

16       76.    American First Finance engaged in the acts and practices herein alleged as part of

17   a pattern, plan, and scheme directed at Plaintiff and similarly situated members of the public,

18   with intent to deceive and induce the purchase of goods through the use of a loan financed by

19   American First Finance and increase the cost of those goods through the loan to the benefit of

20   American First Finance and to the monetary detriment of Plaintiff and the public.

21       77.    Plaintiff relied on the misrepresentations or was not aware of the material

22   omissions and would not have purchased the goods or services from Merchant using financing

23   provided by American First Finance had Plaintiff known the true facts.

24       78.    Plaintiff does not seek damages on this claim at the time this complaint is filed.

25   However, Plaintiff does seek restitution pursuant to Civ. Code § 1780(a)(3) and requests an

26   order enjoining American First Finance's methods, acts, and practices in conducting

27

28

AMENDED COMPLAINT
CASE NO.: 3:23-cv-00978-SK

transactions in California in violation of the UCL, CLRA and the California Financing Law, as well as attorney's fees and costs according to proof.

79.    American First Finance continues to engage in the unlawful conduct described herein to the detriment of the members of the general public of the State of California, such that a public injunction prohibiting such conduct is appropriate.

80.    Plaintiff has provided notice to American First Finance, contemporaneously with serving this complaint, indicating particular alleged violations of § 1770 and demanded that it correct, repair, replace, or otherwise rectify the conduct alleged to be in violation of § 1770. The notice was given in writing and sent by certified mail, return receipt requested, to the place where the Security Agreement prepared by American First Finance required notices to be sent; American First Finance does not have a principal place of business in California. By operation of law and without leave of the court this complaint will be automatically amended to state a claim for damages pursuant to Civ. Code § 1782(d) upon the expiration of thirty days after the notice is given.

81.    Plaintiff has suffered damages in the amount of all funds paid by Plaintiff to American First Finance, plus prejudgment interest, and further damages according to proof, except that no damages are sought on Plaintiff's claim pursuant to the CLRA until 30 days after the notice required by Civ. Code § 1782(a) is given.

82.    American First Finance did the above acts willfully, fraudulently, oppressively, maliciously, and with intent to injure and damage Plaintiff. Upon the expiration of 30 days after the notice required by Civ. Code § 1782(a) is given, Plaintiff seeks punitive damages pursuant to Civ. Code § 1780(a)(4), according to proof.

## **THIRD CAUSE OF ACTION**

### **(Failure to Provide Spanish Language Contract**

### **Violation of Civil Code § 1632)**

83.    Plaintiff incorporates by reference the foregoing allegations.

84.    Plaintiff speaks Spanish as his primary language.

85. California Civil Code § 1632(b) requires that businesses conducting a transaction primarily in the Spanish language provide the other party with a Spanish language translation of the contract or agreement prior to its execution.

86. Merchant is engaged in a trade or business and spoke only Spanish with Plaintiff throughout the above-described sale transaction.

87. However, Merchant did not provide Plaintiff with a Spanish-language translation of the English-language Security Agreement prior to its execution.

88. Neither Merchant nor American First Finance provided Plaintiff with a Spanish-language Security Agreement at any time.

89. Because Merchant did not comply with the requirements of Civ. Code § 1632, Plaintiff elects to rescind the Security Agreement, and agrees to return all consideration received from Merchant, and requests return of all consideration given to Merchant.

90. Merchant fraudulently concealed its conduct by failing to conspicuously display signage in Spanish to the effect that the Merchant was required to provide a contract or agreement in Spanish and AFF fraudulently concealed the Merchant's misconduct by collecting from Plaintiff's bank account and otherwise continuing to process, service and collect on the loan without providing Plaintiff a copy of the agreement in Spanish.

## PRAYER FOR RELIEF

**THEREFORE**, Plaintiff prays for the following relief:

1. A determination that Respondent's Security Agreements are loans subject to the California Financing Law;

2. A determination that Respondent did not have the license required by the California Financing Law necessary to offer, make and fund loans in California;

3. A declaration that Respondent's Security Agreements are void and that no person has any right to collect or receive any principal, charges, or recompense in connection with the transaction;

AMENDED COMPLAINT
CASE NO.: 3:23-cv-00978-SK

4.      A determination that the interest charged pursuant to the Security Agreement is unlawful;

5.      A determination that the APR Provision in the Security Agreement requiring Plaintiff to pay the stated APR is unconscionable;

6.      Preliminary and permanent injunctions preventing Respondent from engaging in the practices which continue to injure and harm Plaintiff and other members of the general public;

7.      An order for restitution to Plaintiff for all principal, interest, charges, or recompense in connection with the transaction paid to Respondent to date and disgorgement of all profits;

8.      Rescission of the Security Agreement and restitution of all money paid thereunder;

9.      An award of monetary damages, including incidental and consequential damages, according to proof;

10.     An award of prejudgment interest according to proof;

11.     An award of all statutory, treble, or punitive damages available under the law;

12.     An award of Plaintiff's reasonable attorneys' fees and costs of suit; and,

13.     An award to Plaintiff of further relief as the Court may deem appropriate, just, and proper.

DATED:  August 28, 2023                    **GREEN & NOBLIN, P.C.**


                                           By:  *s/Robert S. Green-draft*
                                                 Robert S. Green

                                           Emrah M. Sumer
                                           2200 Larkspur Landing Circle, Suite 101
                                           Larkspur, CA  94939
                                           Telephone:  (415) 477-6700
                                           Facsimile:  (415) 477-6710
                                           Email:  gnecf@classcounsel.com

AMENDED COMPLAINT
CASE NO.: 3:23-cv-00978-SK

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Alicia Hinton (State Bar No. 292849)
**LAW OFFICE OF A.L. HINTON**
7081 N. Marks Ave. #104
PMB 414
Fresno, CA 93711
Telephone:  (559) 691-6900
Facsimile:  (559) 421-0373
Email:  alicia@alhintonlaw.com

Attorneys for Plaintiff

-25-